UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BENJAMIN MORALES, JR.,**

       **Plaintiff,**

v.                                                   **Case No: 6:20-cv-724-GKS-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

---

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the undersigned on Claimant's appeal of an administrative decision denying his application for Supplemental Security Income (SSI). Doc. 1. In a decision dated June 19, 2019, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from November 29, 2016, the date the application was filed, through the date of the ALJ's decision. R. 35. Claimant has exhausted his available remedies and the case is properly before the Court. *See* R. 1-7. The undersigned has reviewed the record, the memoranda, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED**.

**I.**      **Issues on Appeal**[1]

Claimant raises the following issues on appeal:

(1) WHETHER THE ALJ PROPERLY CONSIDERED THE EVIDENCE OF PLAINTIFF'S NECK IMPAIRMENT

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

1. <u>Plaintiff's Contentions Regarding Issue No. 1</u>: The ALJ failed to properly consider the Plaintiff's neck impairment as his unfavorable conclusions are based on the 2016 neck MRI and the ALJ does not discuss or even reference the Plaintiff's 2019 neck MRI which showed worsening problems, including severe foraminal stenosis.

(2) WHETHER THE ALJ PROPERLY ASSESSED THE PLAINTIFF'S MENTAL IMPAIRMENTS AND THE PLAINTIFF'S GAF SCORES.

1. <u>Plaintiff's Contentions Regarding Issue No. 2</u>: The ALJ failed to properly assess the Plaintiff's GAF scores when evaluating the Plaintiff's mental impairments. The ALJ's reasons for rejecting GAF scores—which are medical opinion evidence—are non-specific and boilerplate and do not consider Plaintiff's specific situation.

(3) WHETHER AN APPARENT CONFLICT EXISTS BETWEEN THE VE'S TESTIMONY AND THE DOT THAT THE ALJ NEEDED TO RESOLVE BEFORE RELYING ON THE VE'S TESTIMONY.

1. <u>Plaintiff's Contentions Regarding Issue No. 3</u>: The ALJ failed to discharge his duty to resolve apparent inconsistencies between the VE testimony and the DOT.

Doc. 27 at 7, 16, 24.

## II.  Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.  The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Claimant had the following severe impairments: generalized anxiety disorder; major depressive disorder/bipolar disorder; intermittent explosive disorder; and degenerative disc disease of the cervical and lumbar

spine. R. 23.[2] At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled a listing. R. 24-25. In doing so, the ALJ further found that Claimant had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. *Id.*

Prior to step four, the ALJ found that Claimant had the residual functional capacity (RFC) to perform a range of light work with some additional limitations. R. 25-26. Specifically, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b)[3] such that he can lift up to 20 pounds occasionally, can lift and carry up to 10 pounds frequently, can stand and walk with normal breaks for about 6 hours in an 8-hour work day, and can sit with normal breaks for about 6 hours in an 8-hour work day. He can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. He can have no exposure to excessive vibration, unprotected heights, or to hazardous machinery. He can perform simple, routine tasks in a low stress job, defined as having only occasional decision making and only occasional changes in work setting, and such work can have no production quota (e.g., no strict production standard and no rigid production pace, such as an automated line that the worker cannot control). He can have only occasional interaction with the public and with co-workers. He can have only occasional supervision.

*Id.*

---

[2] The sequential evaluation process is described in the ALJ's decision. R. 22-23.

[3] "Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.967(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.967(a).

At step four, the ALJ found that Claimant has no past relevant work. R. 33. At step five, the ALJ found that considering Claimant's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. R. 34. Therefore, Claimant was not disabled. R. 35.

IV.   **Discussion**

Here, Claimant argues that the ALJ erred by failing to properly consider certain medical evidence relating to Claimant's neck problems, namely, a "2019 neck MRI" (R. 1937-38, the 2019 MRI). Doc. 27 at 7-9. Upon review, the undersigned finds that the ALJ erred with respect to the 2019 MRI.[4]

Claimant argues that the ALJ erred when he failed to properly consider the 2019 MRI. Doc. 27 at 7-9. Claimant contends that in failing to mention the 2019 MRI, the ALJ failed to state specifically the weight accorded to obviously probative evidence and to explain why he reached his decision. *Id.* at 7 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). In making his argument, Claimant relies primarily on *Cowart v. Schweiker*. In that case, the Eleventh Circuit stated:

> ***What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision***. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to ***obviously probative exhibits***, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to

---

[4] Because reversal is being recommended on this point, the undersigned does not reach Claimant's remaining assignments of error. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors). If the Court disagrees with the undersigned's recommendation on this point, the undersigned respectfully requests that the Court refer this matter to the undersigned for consideration of Claimant's remaining assignments of error.

scrutinize the record as a whole to determine whether the conclusions reached are rational."

662 F.2d 731 at 735 (emphasis added) (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979) (additional citation omitted)).

In response, the Commissioner contends that the ALJ did not err because the ALJ clearly considered Claimant's neck condition as a whole. *Id.* at 13. The Commissioner relies, in part, on *Dyer v. Barnhart,* which he cites for the proposition that "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision' enables the court to conclude the ALJ considered the [claimant's] medical condition as a whole.'" Doc. 27 at 13 (quoting *Dyer*, 395 F.3d at 1211). The Commissioner does not mention *Cowart*. *See id.* at 9-16.

The *Cowart* decision is binding precedent.[5] Since 2005, however, many courts have followed a citation to *Cowart* with a citation to *Dyer*—quoting a sentence of each opinion for the proposition that the Commissioner cites in his response here. For example, in *Lewen v. Commissioner of Social Security*, the Eleventh Circuit stated:

---

[5] *See, e.g.*, *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (citing *Cowart*) ("The ALJ also failed to state the weight accorded each item of impairment evidence and the reasons for his decisions on such evidence. The ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision."); *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing *Gibson*) ("On remand the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence. . ."); *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871 (11th Cir. 2012) (quoting *Cowart*) ("Although the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to 'sufficiently explain[ ] the weight he has given to obviously probative exhibits.'"); *Levie v. Berryhill*, 757 F. App'x 834, 837 (11th Cir. 2018)(citing *Cowart*)("[W]e have previously said that an ALJ has an obligation to explain the weight given to 'obviously probative' evidence . . ."); *Brown o/b/o Q.T.B. v. Colvin*, No. 1:10-CV-839-LTW, 2014 WL 12857764, at *8 (N.D. Ga. Sept. 8, 2014)("Without the ALJ's analysis as to what consideration and weight he gave obviously probative exhibits, there is no basis for the Court to conclude that the ALJ's ultimate decision on the merits of Plaintiff's claim is rational and supported by substantial evidence.").

> While the ALJ's explanation of the decision must sufficiently explain the weight given to "obviously probative exhibits," *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981), it need not discuss every piece of evidence. *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). "In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision," so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Id.*

605 F. App'x 967, 968 (11th Cir. 2015); *see also, e.g.*, *Herron v. Soc. Sec. Admin., Com'r*, 649 F. App'x 781, 783 (11th Cir. 2016). That statement—repeated in countless decisions—is perhaps not explicitly inconsistent; the requirement that the ALJ need not specifically refer to *every* piece of evidence does not necessarily impact the requirement that the ALJ must explain the weight given to *obviously probative* evidence. Indeed, *Cowart* does not necessarily require that evidence that is not "obviously probative" be weighed.[6]

Regardless, it is the undersigned's experience that *Cowart*'s mandate regarding—at a minimum—obviously probative evidence has in large part fallen by the wayside. Sometimes (including in the Commissioner's argument here), *Cowart* is not cited at all; *Dyer* stands alone without any reference to *Cowart*'s mandate regarding obviously probative evidence. Other times, a citation to *Cowart* is followed by a citation to *Dyer*, but the net result is an argument—or a decision—that whatever evidence is at issue in the case need not be discussed because the ALJ need not discuss every piece of evidence.[7] But citing *Dyer* in that way is potentially contradictory

---

[6] Though, perhaps it does. *Cowart* requires that "the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision." 662 F.2d at 735. That language contains no limitation to "obviously probative evidence." The reference to "obviously probative evidence" comes only from the quotation of the Fourth Circuit case that immediately follows that sentence. *See* footnote 11, *infra*.

[7] For example, in *Moncrief v. Astrue*, the court stated:

> The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for his decision in order to enable a reviewing court to determine whether the decision was based on substantial evidence. *Cowart v. Schweiker*, 662

to *Cowart* in that it seemingly relieves the ALJ from the obligation—set forth in *Cowart*—to weigh (at minimum) each piece of evidence that is obviously probative. *Cowart* and *Dyer* might be read in harmony, but some need for reconciliation exists.

To the extent that *Cowart* and *Dyer* can be reconciled on this point under existing binding authority, *Dyer*'s statement that there is no requirement that the ALJ specifically refer to every piece of evidence (as long as the Court can conclude the ALJ considered the claimant's medical condition as a whole) must be read in conjunction with *Cowart*'s mandate that the ALJ is required to sufficiently explain the weight given to obviously probative evidence. In other words, if these decisions of separate Circuit panels are to be read in harmony, the later-decided *Dyer* must stand for the limited proposition that only evidence that is not obviously probative need not be specifically referred to. Indeed, some courts seem to have already drawn this conclusion.[8]

The undersigned finds that to the extent *Dyer* is read more broadly by the Commissioner or by other courts—such that the exception from required discussion extends to obviously

---

F.2d 731, 735 (11th Cir. 1981). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable this Court to conclude that the ALJ considered [the claimant's] medical conditions as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995)).

300 F. App'x 879, 881 (11th Cir. 2008); *see also, e.g.*, *Randolph v. Astrue*, 291 F. App'x 979, 982 (11th Cir. 2008) (same); *Crumpton v. Astrue*, No. 6:11-CV-02561-LSC, 2012 WL 3260441, at *3 (N.D. Ala. Aug. 3, 2012) (same).

[8] *See, e.g.*, *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 985 (11th Cir. 2013); *Scott v. Berryhill*, No. 16-CIV-23604, 2018 WL 1570373, at *14 (S.D. Fla. Mar. 29, 2018); *Gorham v. Astrue*, No. 1:11-CV-3555-CAP-JSA, 2012 WL 5507306, at *4 (N.D. Ga. Nov. 14, 2012).

probative evidence—such a reading is contrary to prior panel precedent, i.e., *Cowart*.[9] Thus, the prior panel's holding that an ALJ must sufficiently explain the weight given to "obviously probative exhibits" controls, even if the ALJ need not specifically refer to every *other* piece of evidence under *Dyer*. 662 F.2d 731 at 735.[10]

To be sure, no published Eleventh Circuit opinion cites *Cowart* for the proposition that an ALJ must sufficiently explain the weight accorded to "obviously probative" evidence.[11] On the other hand, at least one published Eleventh Circuit opinion cites *Dyer* alone with approval. *See Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1329 (11th Cir. 2020); *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).[12]

---

[9] The prior-panel-precedent rule states that "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (quoting *United States v. Archer,* 531 F.3d 1347, 1352 (11th Cir. 2008)).

[10] "When confronted with an apparent inconsistency in our precedent, we are 'obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule.' *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993). If the precedent cannot be reconciled, our prior panel precedent rule dictates that we follow the earlier decision." *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1328 (11th Cir. 2020) (citing *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000)).

[11] Two published Eleventh Circuit decisions actually cite *Cowart* for an even more rigorous standard: the proposition that the ALJ must specifically state the weight he accords each item of evidence and the reasons for his decision to accept or reject that evidence. *See, Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (citing *Cowart*); *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (quoting *Cowart*). That more rigorous standard is not before the undersigned as a determination that it controls is not necessary to the outcome of this case (i.e., the evidence at issue here *is* obviously probative), although that standard has been addressed by at least one other court. *See Allen o/b/o T.E. v. Saul,* No. CV 2:19-00622-N, 2020 WL 7647482, at *8 n.13 (S.D. Ala. Dec. 23, 2020).

[12] In *Mitchell*, the court stated: "Furthermore, contrary to Mitchell's contention that the ALJ ignored evidence favorable to Mitchell, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad

Further, *Dyer* itself, despite being read repeatedly to modify or restrict *Cowart*, does not mention *Cowart* at all. *See Dyer*, 395 F.3d 1206. That is worth noting again—the *Dyer* opinion makes no mention of *Cowart*. Indeed, considering the oft-cited sentence from *Dyer* in context suggests that the court in *Dyer* did not intend to contradict or limit *Cowart* at all. In *Dyer*, the court stated:

> Although the ALJ did not expressly reference Dyer's taking of one pain medicine, Lortab, this is inconsequential to the ALJ's decision because the record reveals that Dyer was prescribed Lortab, which is used to treat severe pain, on only one occasion, in connection with a back injury from lifting boxes at work. This injury was unrelated to Dyer's long-term and subjective complaints of neck pain in connection with his application for disability. In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Foote,* 67 F.3d at 1561 (internal quotation omitted). Our standard of review is, as it is for the district court, whether the ALJ's conclusion as a whole was supported by substantial evidence in the record. *See Foote,* 67 F.3d at 1558.

*Dyer*, 395 F.3d at 1206. Thus, the court in *Dyer* expressed that there is "no rigid requirement that the ALJ specifically refer to every piece of evidence" only after explaining why the evidence at issue was "unrelated" to Dyer's complaints in connection with his disability application—in other words, that the evidence at issue was not obviously probative. *See id.*; *see also Smith v. Astrue*, No. 811-CV-1795-T-17TBM, 2012 WL 2912658, at *5 (M.D. Fla. June 25, 2012) (explaining that there is a difference between failing to address a pain medication that the plaintiff was prescribed on one occasion, as in *Dyer*, 395 F.3d at 1211, and failing to discuss probative evidence on one of the plaintiff's diagnoses); *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1305 (M.D. Fla. 2011) (same).

---

rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" (quoting *Dyer*, 395 F.3d at 1211).

Regardless, the undersigned is left with the inescapable conclusion that *Cowart* controls. "[The Eleventh Circuit] ha[s] made it abundantly clear that '[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Luckey v. Astrue*, 331 F. App'x 634, 639 (11th Cir. 2009) (quoting *Cowart*, 662 F.2d at 735).[13] In this case, the evidence at issue is the 2019 MRI. The 2019 MRI is of the cervical spine. This is a case in which the ALJ found that Claimant has a severe impairment related to the cervical spine. The MRI was taken during the time period at issue. Upon review, the undersigned finds that this evidence is obviously probative, and the Commissioner makes no argument to the contrary. Indeed, it appears that the Commissioner concedes that the 2019 MRI may weigh in Claimant's favor and just asks the Court to find that 2019 MRI does not preponderate against the remainder of the evidence. *See* Doc. 27 at 15-16. The ALJ did not mention—let alone explain the weight he accorded—the 2019 MRI. In the absence of discernable consideration of this obviously probative evidence, the Court cannot determine whether substantial evidence supports the decision. Accordingly, the undersigned finds that the Commissioner's decision is due to be reversed and remanded.

V.   **Conclusion**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.   **REVERSE** and **REMAND** the final decision of the Commissioner; and

---

[13] This is not to say that the undersigned agrees with the standard set forth in *Cowart* or disagrees that the predominant reading of *Dyer* as limiting *Cowart* should not be the appropriate standard— it is not for the undersigned to say in this context what the law *should* be. The substance of this recommendation is just that *Cowart* controls here as binding precedent, at least in relation to obviously probative evidence.

2. Direct the Clerk to enter judgment in favor of Claimant and against the Commissioner and close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 28, 2021.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy